No. 2-08-0951     Filed:  9-7-10

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 02--CF--3794 |
| ROBERT BUCHANAN, JR., | ) ) ) | Honorable George Bridges, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE O'MALLEY delivered the opinion of the court:

Defendant, Robert Buchanan, Jr., appeals the dismissal of his postconviction petition filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122--1 et seq. (West 2006)).  On appeal, defendant contends that the trial court's dismissal of his petition should be reversed and the matter remanded for an evidentiary hearing because he made a substantial showing of ineffective assistance of appellate and trial counsel.  For the reasons that follow, we affirm.

BACKGROUND

On February 13, 2003, a jury found defendant guilty of first-degree murder (720 ILCS 5/9--1(a)(2) (West 2002)).  The jury also found that the victim was the subject of an order of protection and defendant was the person against whom the order of protection had been issued (720 ILCS 5/9--1(b)(19) (West 2002)), the murder was committed during the course of a home invasion (720 ILCS 5/9--1(b)(6)(c) (West 2002)), and the murder was accompanied by exceptionally brutal or heinous

behavior indicative of wanton cruelty (730 ILCS 5/5--8--1(a)(1)(b) (West 2002)). Defendant was sentenced to life imprisonment.

At trial, the evidence showed that in the early morning hours of October 2, 2002, defendant broke into the home of Wilma Buchanan, his estranged wife, and held her at knifepoint. Upon the arrival of the police, defendant barricaded himself and Wilma in a bedroom and threatened to kill Wilma if the police attempted to enter the bedroom. At some point during the standoff, the police heard a struggle from within, saw the bedroom door open partially, and saw a blood-covered hand emerge. The police kicked open the bedroom door and detonated a flash-bang device. The police then were able to recover Wilma, who was covered in blood. Defendant was placed under arrest. Wilma ultimately died as a result of the 21 stab wounds she suffered, including one that punctured one of the ventricles and penetrated the septum of her heart.

Defendant appealed, arguing that the trial court erred in denying his request for fees to hire a psychiatrist and that the one-act, one-crime rule was violated. We affirmed on the first contention and, with respect to the second contention, modified the judgment to reflect only one sentence for one conviction of first-degree murder. People v. Buchanan, No. 2--04--0388 (2006) (unpublished order under Supreme Court Rule 23).

On December 1, 2006, defendant filed a postconviction petition under the Act. The trial court found that the petition was not frivolous or patently without merit and appointed counsel to represent defendant. Following the filing of supplemental petitions (one by defendant and one by defendant's appointed counsel), the State moved to dismiss the petition. The trial court granted the State's motion, and defendant brought this timely appeal.

ANALYSIS

On appeal, defendant contends that the trial court's dismissal of his petition should be reversed and the matter remanded for an evidentiary hearing, because he made a substantial showing of ineffective assistance of appellate and trial counsel.

The Act provides a means by which a defendant may challenge his conviction for "substantial deprivation of federal or state constitutional rights." People v. Tenner, 175 Ill. 2d 372, 378 (1997). A postconviction action is a collateral attack and "is not a substitute for, or an addendum to, direct appeal." People v. Kokoraleis, 159 Ill. 2d 325, 328 (1994). Except in cases where the death penalty has been imposed, proceedings under the Act are divided into three distinct stages. People v. Gaultney, 174 Ill. 2d 410, 418 (1996). At the first stage, the trial court has 90 days to examine the petition independently and summarily dismiss it if it is frivolous or patently without merit. 725 ILCS 5/122--2.1(a)(2) (West 2006); Gaultney, 174 Ill. 2d at 418. The petition need present only the gist of a constitutional claim; if it does, summary dismissal is improper. Gaultney, 174 Ill. 2d at 418. If not summarily dismissed, the petition proceeds to the second stage, at which an indigent defendant is entitled to appointed counsel, the petition may be amended, and the State may answer or move to dismiss the petition. 725 ILCS 5/122--4, 122--5 (West 2006); Gaultney, 174 Ill. 2d at 418. At the second stage, the petition may be dismissed "when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." People v. Hall, 217 Ill. 2d 324, 334 (2005). A postconviction petitioner is not entitled to an evidentiary hearing as a matter of right; rather, to require an evidentiary hearing, the allegations in the petition must be supported by the record or by accompanying affidavits. People v. Coleman, 183 Ill. 2d 366, 381 (1998). Nonspecific and nonfactual assertions that merely amount to conclusions are not sufficient to require a hearing under the Act. Coleman, 183 Ill. 2d at 381. "In determining whether

to grant an evidentiary hearing, all well-pleaded facts in the petition and in any accompanying affidavits are taken as true." People v. Towns, 182 Ill. 2d 491, 503 (1998). A petition that is not dismissed at the first or second stage advances to the third stage, at which an evidentiary hearing is held. 725 ILCS 5/122--6 (West 2006); Gaultney, 174 Ill. 2d at 418. Dismissal of a petition at the second stage, as occurred here, is reviewed de novo. People v. Whitfield, 217 Ill. 2d 177, 182 (2005).

### A. Ineffective Assistance of Appellate Counsel

Defendant first contends that he made a substantial showing that he received ineffective assistance of appellate counsel when appellate counsel did not raise on direct appeal the State's failure to disclose, prior to trial, one of its witnesses' criminal record. Because defendant fails to demonstrate that there was a substantial likelihood that the result of his direct appeal would have been different absent his appellate counsel's alleged error, this claim is without merit.

During trial, the State called Tyrone Henderson, who testified that he lived next door to Wilma. He testified that in the early morning hours of October 2, 2002, while defendant was holding Wilma captive, he heard defendant tell Wilma that he (defendant) was going to kill her, she was his for life, she would never leave him, and she would not be making her planned move to Arkansas. Henderson also testified that he had been convicted of driving on a revoked license and aggravated battery, he was testifying pursuant to a subpoena from the State's Attorney's office, and the State's Attorney's office was paying for his mileage, lodging, and meals.

The day after Henderson testified, defendant moved for a mistrial, arguing that the State had failed to disclose that in December 2002 Henderson was convicted of driving under the influence and was sentenced to 30 months' probation. Henderson was on probation when he gave the police a

statement regarding the events of October 2, 2002. The State also failed to disclose that Henderson's probation subsequently had been revoked and that he had been sentenced to 16 months' imprisonment. At the time of trial, Henderson was on supervised release. Although the trial court found that the State had violated Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), it denied defendant's motion for a mistrial, instead allowing him the opportunity to recall Henderson to question him regarding his biases, interests, and motives in testifying. Defendant raised this issue in his posttrial motion but did not raise it on direct appeal.

Defendant now argues that appellate counsel was ineffective for failing to raise this issue on direct appeal. Claims of ineffective assistance of appellate counsel are governed by the two-prong test of Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). "A petitioner must show [1] that appellate counsel's performance fell below an objective standard of reasonableness and [2] that this substandard performance caused prejudice, i.e., there is a reasonable probability that, but for appellate counsel's errors, the appeal would have been successful." People v. Golden, 229 Ill. 2d 277, 283 (2008). The failure to establish either of these prongs is fatal to a defendant's claim of ineffective assistance. People v. Hayden, 338 Ill. App. 3d 298, 305 (2003).

Defendant has failed to make a substantial showing of a reasonable probability that his appeal on the Brady claim would have been successful, because any error was harmless.

Defendant argues that the State's failure to make a pretrial disclosure of Henderson's complete criminal history denied him the opportunity to discredit Henderson's testimony through the use of that information. Discrediting Henderson's testimony, according to defendant, was vital because Henderson was the only one who testified that defendant told Wilma that he (defendant) was going to kill her, she was his for life, she would never leave him, and she would not be making her planned

move to Arkansas. This testimony, defendant argues, undermined his request for insanity and guilty-but-mentally-ill jury instructions (which the trial court denied), because it indicated that defendant acted "lucidly and with a jealous heart." Defendant also contends that the testimony supported the determination that defendant committed the murder in an exceptionally brutal or heinous manner, because "it showed that [defendant] was motivated by anger and had forethought about the murder, rather than that he acted impulsively due to a confused and delusional mind."

First, even if defendant had been able to completely discredit Henderson's testimony, insanity and guilty-but-mentally-ill instructions[1] would not have been warranted. An insanity instruction should be given where sufficient evidence has been presented to support a jury's finding of insanity by clear and convincing evidence. People v. Dwight, 368 Ill. App. 3d 873, 879-81 (2006).

The only evidence that defendant was insane was as follows. Wilma's children testified that defendant was acting "crazy" when he broke into the house, meaning that he was bug-eyed, sweating, and talking loudly. Defendant's friends testified that on the way to the liquor store earlier that night, defendant kept looking over his shoulder, but told them it was because he had a warrant out for his arrest. Two of defendant's sisters testified that earlier that evening defendant was acting "unusual" in that he was sweating, pacing, locking doors, closing blinds, and asking questions about how they arrived at the house and with whom they came. Defendant's mother testified that defendant suffered two head injuries when he was growing up and that after the second head injury she noticed changes in his behavior. Finally, defendant's third sister testified that between the time defendant was a teenager and the time he was arrested, he drank to the point of passing out two to four times per

---

[1]An insanity instruction is a prerequisite for a guilty-but-mentally-ill instruction. 725 ILCS 5/115--4(j) (West 2002); People v. McLain, 226 Ill. App. 3d 892, 897 (1992).

week. This evidence could not have established that defendant was insane by clear and convincing evidence. Cf. 720 ILCS 5/6--2(a) (West 2002) (person is legally insane when "as a result of mental disease or mental defect, he lacks substantial capacity to appreciate the criminality of his conduct"); Dwight, 368 Ill. App. 3d at 881 (insanity instruction should have been given where evidence showed that the defendant spoke loudly, cursed frequently, watched TV in his car, told family members the FBI was trying to kill him and the CIA was shooting at him, said he was God, hit a door until his fist bled, and was paranoid, anxious, frantic, and depressed). Accordingly, defendant's claimed inability to discredit Henderson's testimony was harmless in this regard, because even if Henderson's testimony is completely disregarded, the giving of insanity and guilty-but-mentally-ill instructions was not warranted.

Second, evidence other than Henderson's testimony supported the determination that defendant acted in an exceptionally brutal or heinous manner indicative of wanton cruelty. Testimony established that defendant arrived at Wilma's home armed with the knife, kicked his way into the home, and held her and her two children in a bedroom while he held the knife to Wilma's throat. After allowing the children to leave the room, defendant continued to hold Wilma hostage for approximately 30 minutes, repeatedly telling her and the police that he was going to kill her. Only after putting Wilma through this ordeal did defendant end it by stabbing Wilma 21 times in her chest, back, and flank. According to the autopsy results, some of the stab wounds were nearly two inches long and some were four inches deep. The fatal wound was delivered with such force that it punctured Wilma's heart, went completely through one of her ventricles, and entered her septum. The planned nature of the attack, invasion of the home, presence of the victim's children, extended duration of the encounter, nature of the wounds, and method of killing all support a finding that

defendant acted in an exceptionally brutal or heinous manner indicative of wanton cruelty. Thus, the alleged Brady violation was harmless in this regard because overwhelming evidence was presented that defendant acted in a brutal or heinous manner. See People v. Crespo, 203 Ill. 2d 335, 348 (2001) (concluding that there was overwhelming evidence that the defendant committed the crime in a brutal or heinous manner indicative of wanton cruelty where the defendant stabbed the victim 24 times in the head, neck, and body, used an eight-inch kitchen knife, ripped out clumps of the victim's hair with portions of her scalp still attached, and used such force in stabbing the victim that the knife blade was bent at a 90-degree angle).

As the alleged error was harmless in both respects, there is not a reasonable probability that the result of the appeal would have been different had appellate counsel raised the issue of the Brady violation on direct appeal. Accordingly, defendant has failed to establish the second prong of the ineffective-assistance test and thus has failed to make a substantial showing that he suffered the constitutional violation of ineffective assistance of appellate counsel. Consequently, the trial court did not err in dismissing this claim.

### B. Ineffective Assistance of Trial Counsel

Defendant also argues that he made a substantial showing that he received ineffective assistance of trial counsel where trial counsel provided him with incomplete and misleading information regarding his right to testify. Defendant claimed, in his postconviction petition and attached affidavit, that he did not testify because trial counsel told him, prior to trial, that if he testified and was found guilty he would receive a greater sentence and hurt his chances on appeal. Defendant has failed to make a substantial showing that he received ineffective assistance of trial counsel, because he has failed to demonstrate that trial counsel's performance fell below an objective

standard of reasonableness or that there is a reasonable probability that the result of the trial would have been different absent trial counsel's alleged error.

A claim of ineffective assistance of trial counsel requires the defendant to demonstrate that (1) his attorney's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. People v. Youngblood, 389 Ill. App. 3d 209, 214 (2009). The decision whether to testify belongs to the defendant, but the decision should be made with the advice of counsel. Youngblood, 389 Ill. App. 3d at 217.

Defendant relies on the case of People v. Lester, 261 Ill. App. 3d 1075 (1994), for the proposition that an attorney renders ineffective assistance when he or she tells the defendant, prior to trial, that the defendant will hurt his or her chances on appeal if he or she testifies. In Lester, the defendant alleged in his postconviction petition that his trial attorney told him that if he testified, his appeal would suffer. The trial court dismissed the defendant's petition without an evidentiary hearing, and this court reversed. Lester, 261 Ill. App. 3d at 1075. Relying on the Third District's statement in People v. Nix, 150 Ill. App. 3d 48, 51 (1986), that an attorney's "incomplete or inaccurate information to the defendant regarding the defendant's right to testify is arguably a factor in consideration of whether counsel was ineffective," we held that the defendant had been misled into not testifying by his attorney's statement that testifying would cause his appeal to suffer (Lester, 261 Ill. App. 3d at 1079). We stated:

"If an evidentiary hearing were to demonstrate that the petitioner's attorney had, indeed, told him prior to trial that he should not testify because that would jeopardize his appeal, such a statement would indicate that the attorney misled the petitioner by making the

assumption that the trial was lost before it began. This would strongly indicate ineffective assistance of counsel. [Citations.] Although there might be some rationale for this strategy, the record does not disclose any. Therefore, the appropriate forum to explore that possibility is a postconviction evidentiary hearing." (Emphases in original.) Lester, 261 Ill. App. 3d at 1079-80.

While Lester is factually on all fours with this case, we decline to follow it for two reasons. First, it is not necessarily misleading for an attorney to tell a client that testifying might hurt his chances on appeal, even if the attorney assumes that the trial is lost before it begins. An attorney's honest assessment of a case, when made based on his or her professional experience, cannot be considered misleading. Cf. People v. Wilson, 295 Ill. App. 3d 228, 237 (1998) ("It is well settled in Illinois that an attorney's honest assessment of a defendant's case may not be the basis for holding a guilty plea involuntary. In fact, given the considerable evidence against defendant in this case, counsel owed defendant a duty to inform him of the probability of outcomes if defendant chose to proceed to trial"). Not every case is a winner; some are hopeless causes, and attorneys are regularly called upon to assess the strength of cases. They must do so in advising clients whether to take plea deals and, as in this case, whether to testify. On occasion, this means recognizing that a defendant is unlikely to succeed at trial and advising that defendant accordingly in order to minimize the possible damage. If the assessment of cases did not sometimes involve recognizing that defendants are unlikely to succeed at trial, attorneys would never advise defendants to take deals offered by the State, and many more cases would go to trial.

In this case, defendant claims that trial counsel informed him that if he testified, he would receive a greater sentence and hurt his chances on appeal. Defendant has offered nothing to indicate

that this was anything other than trial counsel's honest assessment of defendant's case, properly informing defendant of the potential consequences should he choose to exercise his right to testify. Nor does defendant offer anything that would indicate that trial counsel's assessment of the impact of defendant's testimony was erroneous or incomplete. Thus, defendant himself decided not to testify, on the sound advice of counsel. Accordingly, we conclude that defendant has failed to make a substantial showing that trial counsel's actions fell below an objective standard of reasonableness.

The second reason that we decline to follow Lester is the decision's complete failure to address the prejudice prong of the ineffective-assistance-of-counsel test. To survive the dismissal of a postconviction claim that trial counsel was ineffective for interfering with the defendant's right to decide whether to testify, the defendant must demonstrate that he suffered prejudice. People v. Madej, 177 Ill. 2d 116, 146 (1997); Youngblood, 389 Ill. App. 3d at 218. To demonstrate prejudice, the defendant must show a reasonable probability that the outcome of the proceeding would have been different. Madej, 177 Ill. 2d at 146 ("We do not believe that the absence of defendant's testimony would create a reasonable probability that the outcome would have been different in light of the overwhelming evidence presented at trial"); Youngblood, 389 Ill. App. 3d at 218-19 (holding that the defendant failed to demonstrate prejudice where the testimony the defendant claimed he would have given would not have changed the outcome of the trial). The Lester decision does not address the prejudice prong at all, instead concluding that the defendant had made a substantial showing of ineffective assistance simply because the defendant was "misled" by the attorney's statement that the defendant's appeal would be jeopardized if he testified.

Here, defendant makes no allegation of a reasonable probability that the outcome of the trial would have been different had he testified. Indeed, defendant makes no allegation even of what his

testimony would have been had he testified. Moreover, the evidence that defendant murdered Wilma was overwhelming. The evidence established that defendant broke in the back door of Wilma's home, caught her and her children in the master bedroom, and held a knife to Wilma's neck while he barricaded them in the bedroom and engaged in a standoff with the police. Sometime between the time Wilma's children left the bedroom and the time the police were able to remove Wilma from the bedroom, Wilma was stabbed 21 times. Defendant was the only person in the bedroom with Wilma, and numerous people heard him tell her that he was going to kill her. This evidence leads to the inescapable conclusion that defendant murdered Wilma. Accordingly, defendant has failed to demonstrate a reasonable probability that the result would have been different absent trial counsel's alleged error. See Madej, 177 Ill. 2d at 146-47 (the defendant failed to satisfy the prejudice prong where the evidence of defendant's guilt was overwhelming, even absent trial counsel's alleged error).

Having failed to satisfy either prong of the ineffective-assistance standard, defendant has also failed to make a substantial showing that he suffered the constitutional violation of ineffective assistance of trial counsel. Thus, the trial court did not err in dismissing this claim.

CONCLUSION

As defendant has failed to make a substantial showing that he received ineffective assistance of appellate or trial counsel, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

JORGENSEN and HUDSON, JJ., concur.