# Illinois Official Reports

## Appellate Court

> ### *People v. Johnson*, 2014 IL App (2d) 121004

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD JOHNSON, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-1004 |
| Filed<br>Modified upon<br>denial of rehearing | November 17, 2014<br><br>January 23, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for first-degree murder and aggravated criminal sexual assault were upheld over his contentions that the prosecutor's improper comments in rebuttal prejudiced defendant, that other-crimes evidence was improperly admitted, that his counsel was ineffective and that defense counsel's cross-examination of one witness was improperly limited, since there was nothing inconsistent about the prosecutor successfully excluding irrelevant evidence offered by defendant that the victim had engaged in sexually inappropriate conduct around strangers and then arguing in rebuttal that the victim would not have sex with a stranger, the other-crimes evidence was relevant with respect to defendant's propensity and intent to commit sexual assaults, and the fact that the jury was instructed that it could consider the other-crimes evidence for other improper reasons was not ground for reversal, based on the overwhelming evidence of defendant's guilt. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 09-CF-2212; the Hon. Rosemary Collins, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Thomas A. Lilien, Alan D. Goldberg, and Charles W. Hoffman, all of State Appellate Defender's Office, of Chicago, for appellant.

Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer, and Matthew J. Schmidt, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hudson and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1 Following a jury trial, the defendant, Edward Johnson, was convicted of first-degree murder (720 ILCS 5/9-1(a)(1) (West 2008)) and aggravated criminal sexual assault (720 ILCS 5/12-14(a)(2) (West 2008)). He was sentenced to 50 years' imprisonment for the murder conviction and a mandatory term of natural life imprisonment for the aggravated-criminal-sexual-assault conviction. On appeal, the defendant argues that: (1) he was prejudiced by improper prosecutorial comments in rebuttal; (2) the trial court erred in admitting other-crimes evidence as to the issues of motive, lack of mistake, and *modus operandi*; (3) he was deprived of the effective assistance of counsel; and (4) the trial court erred in curtailing defense counsel's cross-examination of a certain witness. We affirm.

¶ 2                                BACKGROUND
¶ 3 On August 27, 2009, the defendant was charged by indictment with the aggravated criminal sexual assault (720 ILCS 5/12-14(a)(2) (West 2008)) and first-degree murder (720 ILCS 5/9-1(a)(1) (West 2008)) of the victim, Vicki F. The charges alleged that the defendant had used force or threatened force to commit a sexual act upon the victim and that he had killed the victim by striking her in the head.

¶ 4 Between June 1 and June 7, 2012, the trial court conducted a jury trial. The State's evidence established that, on May 17, 2008, the victim's body was discovered on the concrete porch of an abandoned brick business building at 210 W. Jefferson in Rockford. (This building was three blocks away from where the victim lived.) The victim was lying on her back with dried blood on her face and in her hair. Her pants were somewhat twisted and her shirt had been slightly pulled up. The zipper on her pants was slightly down but the pants themselves were fastened at the waist. Her bra was undone. At the morgue, a deputy coroner discovered that she had green paint flakes lodged in her pubic hairs and on her thighs. The paint flakes appeared to be consistent with paint flakes on the porch where her body was discovered.

¶ 5     The victim's autopsy indicated that she had abrasions above her left eye, on her left temporal area, and on her nose. There were also lacerations on her lips, an abrasion and contusion on her left arm, and a small laceration on her posterior right scalp. A pathologist determined that many of the external injuries were the result of blunt force trauma, consistent with a hit or punch and inconsistent with a fall. The injury to the back of her head was consistent with her head being smashed into a hard object, like concrete. All of the injuries were recent and would have occurred around the time of death. The pathologist found no trauma, lacerations, or bruising to the victim's pubic or anal area. The pathologist explained, however, that a lack of such injuries did not in itself demonstrate whether the victim had been sexually assaulted.

¶ 6     A forensic scientist examined the victim's vaginal and anal areas and found the presence of semen. The semen matched the defendant's DNA profile. Based upon the amount of sperm found on the victim, the forensic scientist determined that the victim could have engaged in sex up to a day prior to her death, or 12 to 24 hours before the collection of evidence from her body.

¶ 7     The defendant denied killing the victim or sexually assaulting her. He had no specific memory of having sex with her. However, he admitted that it was a possibility.

¶ 8     The State also introduced evidence that the defendant had assaulted three other women. The defendant responded to all of those allegations.

¶ 9                       Brianna K.

¶ 10     Brianna testified that on January 4, 1997, she was 13 years old. At 9:30 p.m. on that day, she was walking in her neighborhood when she was accosted by the defendant. He grabbed her by the arm, told her that he had a gun, and forced her to walk with him. She broke free and began to run, but the defendant caught her and forced her to the ground in the parking lot of a car dealership. He got on top of her and repeatedly struck her in the face with his fist. He told her that he was going to kill her or hurt her badly.

¶ 11     The defendant dragged Brianna into some bushes, ripped off her clothes, and placed his mouth on one of her breasts. He then attempted to place his penis in her mouth, but she slapped it away. When he tried to insert his penis in her vagina, the police arrived. The defendant attempted to run, but was immediately caught by the police. An ambulance took Brianna to the hospital, where she remained for two days. She had been rendered unconscious during the assault, and she suffered numerous injuries to her face, legs, and thighs.

¶ 12     The defendant acknowledged that in 1997 he pled guilty to sexually assaulting Brianna.

¶ 13                       Linda P.

¶ 14     Linda testified that, in 2008, she moved from South Dakota to Rockford to look for a job in the insurance field. On July 7, 2008, around 6 a.m., while walking to a McDonald's restaurant, she noticed that a man on a bicycle (later identified as the defendant) was following her. She and the defendant engaged in small talk, but she became uncomfortable when he put his arm around her waist. As she walked faster, the defendant kept pace beside her on his bicycle. When they reached the end of the block, she turned and entered an alley, which she believed was a short cut to McDonald's.

¶ 15     After Linda entered the alley, the defendant pushed her to the ground, held her down, and told her to "give him a blow job." At that point, the defendant lowered his pants and forced Linda to perform oral sex by placing his penis in her mouth. When the defendant removed his penis from her mouth, she immediately got up, ran to the McDonald's restaurant, and asked the clerk to call the police.

¶ 16     At the time of the incident, Linda had been prescribed several medications for bipolar disorder, including lithium and Buspar, but she had not been taking her medications. At the time of trial, she was under a doctor's care and taking Buspar and Paxil.

¶ 17     On cross-examination, Linda acknowledged that the defendant never struck her or displayed a weapon. However, she felt threatened by his intimidating manner and because he was physically bigger and stronger. She also acknowledged that the alley into which she turned was more secluded than the street on which she could have continued walking. She denied ever working as a prostitute. She denied agreeing to have sex with the defendant in exchange for money. She acknowledged that she was unemployed at the time of the assault.

¶ 18     The defendant testified that at the time in question he was riding his bicycle to his job at the Octopus Car Wash on East State Street in Rockford. While on his way to work, Linda yelled out to him and asked, "What's your name?" The defendant stopped and talked to her. Eventually, Linda offered to perform oral sex on him in exchange for $10. After he agreed, Linda led him to an alley behind a Walgreen's drug store. Linda then performed oral sex on him. He did not threaten her or force her to do so.

¶ 19     When they had finished, Linda asked him for the money. He patted his pockets and held his hands up, indicating that he did not have any. Linda then became upset and threatened to call the police. He tried to calm her down by telling her that he would give her the money after he got off work that day. However, she stormed out of the alley. The defendant then got on his bicycle and went to work.

¶ 20                                         Lori L.

¶ 21     Lori testified that she was currently serving a sentence in the Illinois Department of Corrections for a felony offense of prostitution. She also acknowledged that she had prior convictions of felony and misdemeanor prostitution and also a felony drug conviction.

¶ 22     On July 11, 2008, around 10 p.m., she went to the Monkey Business bar in Rockford. She denied that she was working as a prostitute that evening. Rather, she went to the bar to celebrate her son's twenty-fourth birthday. She left the bar at approximately 1:30 a.m., alone and "really intoxicated."

¶ 23     While she was walking through the parking lot behind the bar, the defendant approached and asked if she wanted a "date." She said "no" and told the defendant that she "didn't date black men." The defendant then hit her in the face and ordered her into a nearby alley. She complied because she feared for her life.

¶ 24     Once they were in the alley, the defendant pulled her jeans and underwear down to her knees. As she lay on her stomach, the defendant raped her anally. Several minutes later, two police officers arrived and shined a flashlight on them. The defendant got up and told the officers that he and Lori were friends. Lori shouted, "No, I was raped. I was raped." Lori declined an offer to be driven to the hospital. She told the police that she just wanted to go home.

¶ 25    Lori acknowledged that, at the time of the incident, both her husband and her boyfriend were black men. She explained that, when she told the defendant that she did not "date" black men, she meant that she did not want to have sex with him for money. She also acknowledged that she told the police that she had not been injured in any way during the assault. She denied telling the police that night that she and the defendant were just friends having sex. On cross-examination, she repeated that she was not working as a prostitute on the night in question.

¶ 26    Rockford police officers Jordan Stedman and Jeffrey Oberts testified that on July 12, 2008, at approximately 2:30 a.m., they responded to a call that people were having sex in the backyard of the residence at 1220 15th Avenue in Rockford. Officer Stedman testified that as he approached the defendant and Lori "they both stated, 'We're friends. We're having sex.' " Officer Oberts testified that, as he approached, Lori told him that the sex "was consensual" and that "they were friends."

¶ 27    Officer Stedman further testified that, after the defendant and Lori were separated, Lori told him that the defendant had raped her. She also stated that she had not been injured during the incident and that the defendant did not strike her or become violent. She did not want to go to the hospital. The officers did not arrest the defendant that night.

¶ 28    The defendant testified that in the early morning hours of July 12, 2008, he was walking toward a liquor store near the Monkey Business bar. A woman (he later learned was Lori) approached him and asked, "Hey baby, you looking for a good time?" She then offered to have sex with the defendant for $10. The defendant offered $6 and she accepted, explaining that "It's slow out here anyway."

¶ 29    Lori then led the defendant to the backyard of a building. They then had sex. They continued until the police arrived. Lori told the police that they were "just friends," and he agreed.

¶ 30                    Jury's Verdict and Subsequent Proceedings

¶ 31    At the close of the trial, the jury found the defendant guilty of first-degree murder and aggravated criminal sexual assault. Following the denial of his posttrial motion, the trial court sentenced the defendant to 50 years' imprisonment for the murder conviction. Because the aggravated-criminal-sexual-assault conviction was the defendant's second conviction of that offense, the trial court imposed a mandatory sentence of natural life imprisonment. The defendant thereafter filed a timely notice of appeal.

¶ 32                                    ANALYSIS

¶ 33    The defendant's first contention on appeal is that he was deprived of a fair trial due to the State's prosecutorial misconduct in its rebuttal. Specifically, the defendant argues that certain comments made by the prosecutor exploited a ruling by the trial court that the defendant could not introduce evidence that the victim had engaged in inappropriate sexual behavior toward strangers.

¶ 34    Prior to trial, the State filed a motion *in limine* under the rape-shield statute (725 ILCS 5/115-7 (West 2008)), seeking to exclude any evidence of the victim's sexual conduct, activity, or reputation. The State noted that the defense had subpoenaed Vicki Wagner, a nurse at the nursing home where the victim's husband was residing. Wagner would testify

that the victim had visited her husband at the facility several times. During those visits, the victim "acted sexually inappropriate[ly] in the building, that [she] had the habit of lifting her legs onto furniture and running, acting inappropriately in front of strangers while talking sexually inappropriate[ly]." The State argued that this was "improper character evidence" and that "any sexual activity that she had is not relevant to any issue in this case."

¶ 35 Defense counsel objected to the State's motion, arguing that evidence of the victim's inappropriate sexual behavior around strangers at the nursing home should be available to the defense to rebut the State's anticipated argument that the victim would never have consented to having sex with a stranger such as the defendant. The trial court granted the State's motion *in limine*, concluding that the disputed evidence was not relevant to any aspect of the case.

¶ 36 In closing arguments at trial, defense counsel argued that the victim consented to having sex with the defendant. Defense counsel argued that this was a "reasonable inference" due to the lack of injuries to the victim's upper thighs and buttocks. Defense counsel further asserted: "The fact of the matter is in our society random, anonymous acts of sex take place. They are not rare. They may not be many people's cup of tea, but they are a fact of life."

¶ 37 In her rebuttal argument, the prosecutor stated:

"And how do we know that the defendant didn't have consensual sex with [the victim]? Well, the defense called her friend here to testify; and she talked about [the victim] and that she was married, that she kept her hair immaculate, her make-up immaculate. There's no evidence that she knew this defendant at all. And yet the defense wants you to believe that on one random night she just goes out and decides to have sexual intercourse with a stranger. Doesn't make sense."

¶ 38 Defense counsel objected, arguing that the prosecutor's argument was unfair and improper because the defense had been precluded from presenting evidence of the victim's inappropriate sexual behavior and language around strangers. The trial court overruled the objection, explaining that there was no connection between the motion *in limine* and the prosecutor's argument.

¶ 39 Whether statements made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue, which we review *de novo*. *People v. Graham*, 206 Ill. 2d 465, 474 (2003). In *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007), our supreme court explained:

"Prosecutors are afforded wide latitude in closing argument. [Citation.] In reviewing comments made at closing arguments, this court asks whether or not the comments engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from them. [Citation.] Misconduct in closing argument is substantial and warrants reversal and a new trial if the improper remarks constituted a material factor in a defendant's conviction. [Citation.] If the jury could have reached a contrary verdict had the improper remarks not been made, or the reviewing court cannot say that the prosecutor's improper remarks did not contribute to the defendant's conviction, a new trial should be granted. [Citation.]"

¶ 40 We do not believe that the prosecutor's rebuttal improperly exploited the motion *in limine*. The State's motion *in limine* prevented the defense (or the State) from referring to evidence that the victim had acted sexually inappropriately at a nursing home by lifting her

legs on furniture, running, and talking sexually inappropriately in front of strangers. In rebuttal, the State asserted that it did not make sense that the victim would have sex with a stranger. Despite the defendant's insistence to the contrary, we do not believe that the victim's uncouth or flirtatious behavior equated to a willingness to have sex with strangers.

¶ 41    In so ruling, we reject the defendant's argument that, because the State successfully had the evidence at issue excluded pursuant to the rape-shield statute, the State necessarily acknowledged that the evidence was sexual. Because of the sexual nature of that evidence, the defendant maintains, the State could not then comment on the absence of such evidence in its closing arguments.

¶ 42    The defendant's argument misconstrues the purpose of the rape-shield statute. The purpose of the rape-shield statute "is to prevent the defendant from harassing and humiliating the complaining witness with evidence of either her reputation for chastity or specific acts of sexual conduct with persons other than [the] defendant." *People v. Summers*, 353 Ill. App. 3d 367, 373 (2004). Nevertheless, "[t]he rape shield statute's preclusion of prior sexual conduct is not absolute," and while the statute should be applied "in a manner consistent with its purpose," it "should never be mechanically applied to obscure relevant evidence that bears directly on guilt or innocence." *People v. Hill*, 289 Ill. App. 3d 859, 862 (1997). The statute's " 'when constitutionally required' " exception "requires that a defendant 'be permitted to offer certain evidence which [is] *directly* relevant to matters at issue in the case, notwithstanding that it concern[s] the victim's prior sexual activity.' (Emphasis in original.)" *Summers*, 353 Ill. App. 3d at 373 (quoting *People v. Santos*, 211 Ill. 2d 395, 405-06 (2004)). "The true question is always one of relevancy" (*Hill*, 289 Ill. App. 3d at 864), and "[t]he alleged victim's sexual history is not 'constitutionally required to be admitted' unless it would make a meaningful contribution to the fact-finding enterprise" (*People v. Maxwell*, 2011 IL App (4th) 100434, ¶ 76 (quoting 725 ILCS 5/115-7(a) (West 2010))). Evidentiary rulings made pursuant to the rape-shield statute are reviewed for an abuse of discretion (*Santos*, 211 Ill. 2d at 401), which "occurs where the trial court's decision is arbitrary, fanciful or unreasonable [citation] or where no reasonable person would agree with the position adopted by the trial court" (*People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 43    Thus, the rape-shield statute does not bar all evidence of past sexual activity, only evidence of past sexual activity that is not relevant to the charges at issue. As stated above, we do not believe that, because the victim allegedly engaged in uncouth or flirtatious behavior, the jury could infer that she would have sex with strangers. Thus, there was nothing inconsistent or improper about the State seeking to exclude evidence that was not relevant (the victim's alleged uncouth or flirtatious behavior) and then arguing that the victim would not engage in sex with a stranger.

¶ 44    We also find unpersuasive the defendant's reliance on *Commonwealth v. Harris*, 825 N.E.2d 58 (Mass. 2005), *State v. Suka*, 901 P.2d 1272 (Haw. Ct. App. 1995), *rev'd on other grounds*, *State v. Holbron*, 904 P.2d 912 (Haw. 1995), and *People v. Daggett*, 275 Cal. Rptr. 287 (Cal. Ct. App. 1990). Each of those cases addressed a situation where the prosecutor made an assertion that directly contradicted the specific evidence that had been excluded. See *Harris*, 825 N.E.2d at 70-72 (prosecutor moved to exclude the victim's prostitution convictions and then in the closing argument specifically said that there was no evidence that the victim was a prostitute); *Suka*, 901 P.2d at 1274-75 (prosecutor asked to exclude the victim's sexual history and then specifically said that the victim's encounter with the

defendant was her first sexual experience); *Daggett*, 275 Cal. Rptr. at 290-91 (prosecutor sought to exclude evidence of previous molestation and then stated that the child had no previous sexual experience). Those cases are distinguishable because here the State's argument was not directly related to the evidence that it had sought to exclude.

¶ 45　　The defendant's second contention on appeal is that the trial court erred in admitting other-crimes evidence on the issues of motive, lack of mistake, and *modus operandi* and instructing the jury that it could consider the other-crimes evidence on those issues. The defendant argues that neither his purported motive nor the possibility of a mistake was at issue under the facts of the case. Further, the defendant maintains that the other crimes were insufficiently similar to the sexual assault on the victim to be admissible to show *modus operandi*.

¶ 46　　Generally, evidence of other crimes is inadmissible to show the defendant's propensity to commit a crime. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003). Evidence of other crimes is admissible if it is relevant for any purpose other than to show the defendant's propensity to commit a crime, such as *modus operandi*, intent, motive, identity, or absence of mistake. *People v. Pikes*, 2013 IL 115171, ¶ 11. Subsequent bad acts may be used as other-crimes evidence. See *People v. Bartall*, 98 Ill. 2d 294, 312-13 (1983).

¶ 47　　The Illinois General Assembly, however, has created a limited exception to this general rule of inadmissibility for other-crimes evidence intended to show the defendant's propensity to commit crimes. *People v. Ward*, 2011 IL 108690, ¶ 25. If a defendant is tried on one of the enumerated sex offenses, section 115-7.3(b) of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/115-7.3(b) (West 2008)) allows the State to introduce evidence that the defendant also committed another of the specified sex offenses. The statute expressly permits this other-crimes evidence to be admitted for any relevant purpose. 725 ILCS 5/115-7.3(b) (West 2008). As the Supreme Court recognized in *Michelson v. United States*, 335 U.S. 469, 475-76 (1948), propensity evidence is often highly relevant, making other-crimes evidence admissible under section 115-7.3(b) to show a defendant's propensity to commit sex crimes. *Ward*, 2011 IL 108690, ¶ 25. Before the other-crimes evidence may be used, however, the statute requires the trial court to apply a balancing test, weighing the probative value of the evidence against the undue prejudice it might cause to the defendant. 725 ILCS 5/115-7.3(c) (West 2008). The admissibility of evidence rests within the discretion of the trial court, and its decision will not be disturbed absent an abuse of discretion. *Pikes*, 2013 IL 115171, ¶ 12.

¶ 48　　Here, the trial court admitted the other-crimes evidence on the basis that it was relevant as to the defendant's propensity to commit sexual assaults, his intent, his motive, his lack of mistake, and his *modus operandi*. We do not believe that the trial court abused its discretion in admitting that evidence pursuant to section 115-7.3(b) as to the defendant's propensity to commit sexual assaults as well as his intent to commit such acts. See *People v. Walston*, 386 Ill. App. 3d 598, 619-20 (2008) (explaining that, when the legislature enacted section 115-7.3, it provided that other-crimes evidence offered to show propensity not only is no longer *per se* unfairly prejudicial, but is actually proper). However, it was improper for the trial court to admit the other-crimes evidence for the other purposes. Because the defendant maintained that his sexual intercourse with the victim was consensual, his *modus operandi* was not at issue. See *People v. Boyd*, 366 Ill. App. 3d 84, 92 (2006) (where the defense theory was consent, the identity of the offender was not at issue and therefore *modus operandi* was not a relevant basis to admit the other-crimes evidence). Further, because the

defendant's theory was consent, lack of mistake was not at issue. See *People v. Lenley*, 345 Ill. App. 3d 399, 408-09 (2003) (other crimes admissible for lack of mistake only when the defendant claims that his actions were based on mistake). Moreover, there is nothing in the record to suggest that the defendant's assault of Brianna in 1997 served as a motive for him to assault the victim in 2008. His assaults on Lori and Linda, which occurred after the assault on the victim, also could not demonstrate his motive to assault the victim. See *People v. Hansen*, 313 Ill. App. 3d 491, 501-02 (2000) (defendant's subsequent bad acts were not relevant to prove his motive for an earlier crime).

¶ 49     The State insists that the trial court properly admitted the other crimes on all five of the above-listed grounds. The State points to this court's decision in *People v. Perez*, 2012 IL App (2d) 100865, ¶ 58, in which we stated that evidence admitted pursuant to section 115-7.3(b) is admissible "for any purpose, *i.e.*, *without limitation*." (Emphasis in original.) The State contends that those cases that limit the admissibility of other-crimes evidence–such as *Lenley* and *Hansen*–address the admissibility of other-crimes evidence pursuant to the common law–as opposed to section 115-7.3(b)–and thus are not applicable to the case at bar.

¶ 50     The State's reading of this court's decision in *Perez* is overbroad and out of full context. In *Perez*, this court also stated: "Like the common law, however, section 115-7.3 permits other-crimes evidence only if: (1) it is relevant; and (2) its probative value is not outweighed by its prejudicial effect." *Id.* ¶ 46. Here, the other-crimes evidence was not relevant as to the issues of lack of mistake, motive, and *modus operandi*. As such, pursuant to section 115-7.3, it was not proper for the trial court to admit the evidence for those purposes.

¶ 51     Nonetheless, evidence admissible for one purpose is not affected by inadmissibility for another. *People v. Carter*, 38 Ill. 2d 496, 504 (1967); see also *Boyd*, 366 Ill. App. 3d at 92, 95 (admission of other-crimes evidence for propensity was proper, even though it should not have been admitted for design). Thus, because the other-crimes evidence was relevant as to the defendant's propensity and his intent to commit sexual assaults, the trial court properly admitted that evidence. See *Carter*, 38 Ill. 2d at 504.

¶ 52     We also reject the defendant's argument that the trial court committed reversible error in instructing the jury that it could consider the other-crimes evidence on the issues of motive, lack of mistake, and *modus operandi*. The trial court's full instruction was that the jury could consider the other-crimes evidence only as to the issues of propensity, intent, motive, lack of mistake, and *modus operandi*. We first note that the trial court was not required to give any limiting instruction. See *Perez*, 2012 IL App (2d) 100865, ¶ 58 (limiting instructions are not required where the evidence is admissible under section 115-7.3). Second, even if the instruction is given, the fact that it includes improper issues is not a ground for reversal. See *People v. Spyres*, 359 Ill. App. 3d 1108, 1114 (2005) (" 'When jurors receive a limiting instruction that permits them to consider evidence for a number of reasons, and one of those reasons is determined on appeal to be improper, judgment of conviction must be affirmed despite the overly broad instruction.' " (quoting *People v. Jones*, 156 Ill. 2d 225, 240 (1993))). Accordingly, because the trial court properly instructed the jury that it could consider the other-crimes evidence as to the defendant's propensity and intent, its instruction that the jury could also consider that evidence for three improper reasons is not a ground for reversal. *Id.*

¶ 53     In so ruling, we reject the defendant's argument that *Spyres* is distinguishable. Defendant wrongly asserts that in *Spyres* the proper reasons outnumbered the improper reasons. In

*Spyres*, the jury was instructed to consider the evidence for two presumably improper reasons and one proper reason. *Id.* at 1115. Similarly, in the present case, the jury was instructed to consider the evidence for three improper reasons and two proper reasons. Accordingly, *Spyres* does not inquire whether the improper reasons for considering other-crimes evidence outnumbered the proper reasons. Rather, it states that "the inclusion in the instruction of *a proper exception *** requires us to affirm defendant's conviction.*" (Emphasis added.) *Id.* Thus, here, as the trial court's jury instruction regarding other-crimes evidence was based on at least one proper reason, the instruction is not a basis for reversal. See *id.*

¶ 54    In his petition for rehearing, the defendant also argues that our reliance on *Spyres* is misplaced because that case took the above-quoted language from *Jones* out of context. The defendant argues that the *Spyres* court erroneously omitted *Jones'* harmless-error analysis. We disagree with the defendant's interpretation of *Jones*.

¶ 55    In *Jones*, the defendant was charged with aggravated criminal sexual assault. At trial, the State introduced evidence that the defendant had raped another woman. The trial court then instructed the jury that it could consider the other rape as evidence of design and *modus operandi*. On appeal, the supreme court determined that the trial court had improperly instructed the jury that it could consider the other rape as evidence of design. The supreme court then explained, however, that "this [did] not necessarily compel reversal" because "[o]ther-crimes evidence that is admissible for one reason is not affected by inadmissibility for another reason." *Jones*, 156 Ill. 2d at 240. The supreme court then found that the other rape "was properly received to show the rapist's *modus operandi.*" *Id.* The supreme court stated that "[s]ince the evidence was admissible to show *modus operandi*, the trial court's overbroad instruction concerning common design was harmless." *Id.*

¶ 56    In *Jones*, the supreme court did not conduct any harmless-error analysis apart from its determining that the other-crimes evidence was admissible for at least one reason. See *id.* That is exactly what *Spyres* did. Thus, as *Spyres* is consistent with *Jones*, we may properly rely on *Spyres*.

¶ 57    In his petition for rehearing, the defendant further argues that our decision is inconsistent with this court's recent decisions in *People v. Johnson*, 2013 IL App (2d) 110535, and *People v. Young*, 2013 IL App (2d) 120167. We acknowledge that both of those cases did conduct a plain-error analysis as to the trial court's improper limiting instruction regarding other-crimes evidence. (Those cases conducted a plain-error analysis as opposed to a harmless-error analysis, because the defendants did not raise a timely objection to the erroneous instruction at trial.) However, *Johnson* is distinguishable because at issue there was a second error that compounded the trial court's improper instruction. See *Johnson*, 2013 IL App (2d) 110535, ¶ 42 (determining that, because separate charges were improperly joined together in conjunction with improper jury instruction, defendant was entitled to a separate trial on each charge). Here, unlike in *Johnson*, the trial court did not commit any errors that compounded the improper instruction.

¶ 58    In *Young*, although we conducted a plain-error analysis as to the trial court's overbroad jury instruction, under *Jones* we were not required to do so. Thus, that case does not require us to reach a different result either.

¶ 59    Further, even if we were to conduct such an analysis, we would find that the error was indeed harmless because the evidence against the defendant was overwhelming. DNA evidence found on the victim conclusively established that the defendant had sexual

intercourse with the victim 12 to 24 hours before her body was discovered on the concrete porch of an abandoned building. That building was three blocks from where the victim lived. The green flakes of paint that were recovered from the victim's pubic hair and thighs matched the green paint on the building's porch and established that the defendant and the victim had sexual intercourse at that location. This fact rendered incredible the defendant's testimony that the sexual intercourse was consensual. No rational trier of fact could conclude that the victim chose to have sex with a stranger on the concrete porch of an abandoned building when she could have had sex with him at her home instead. *Cf. People v. Jackson*, 331 Ill. App. 3d 279, 289 (2002) (finding that sexual assaults are traditionally conducted in isolated areas). Although the defendant suggests that the lack of injuries to the victim's pelvic area demonstrated that the sex was consensual, a stronger inference from the evidence is that the victim's head injuries prevented her from resisting the assault. Further, the defendant's testimony that the sex was consensual was strongly rebutted by the testimony of Brianna, Lori, and Linda, who all explained how the defendant had sexually assaulted them. Their testimony clearly established that the defendant had the propensity to sexually assault women. Thus, there was overwhelming evidence that the defendant had sexually assaulted the victim.

¶ 60 Based on the evidence that the defendant had sexually assaulted the victim, it was also overwhelmingly clear that the defendant had also killed the victim. No one other than the defendant was linked to the crime scene. It would strain credulity for any rational trier of fact to determine that the defendant sexually assaulted the victim but then someone else killed her. Because the evidence against the defendant was overwhelming, the trial court's overbroad instruction was harmless.

¶ 61 We also reject the defendant's argument that this case is analogous to *Lenley*. In *Lenley*, during the defendant's burglary trial, the trial court listed four other-crimes exceptions under which the jury could consider evidence of the defendant's participation in other burglaries. On appeal, the reviewing court reversed the defendant's convictions after concluding that the other-crimes evidence was not admissible under any of the four exceptions. *Lenley*, 345 Ill. App. 3d at 412. Here, unlike in *Lenley*, the other-crimes evidence was properly admissible for two different reasons. Thus, *Lenley* does not apply here.

¶ 62 The defendant's third contention on appeal is that he was deprived of the effective assistance of counsel. Specifically, he argues that defense counsel was ineffective for (1) submitting an improper limiting instruction and (2) not objecting to the State's improper limiting instruction, both of which allowed the jury to consider the defendant's alleged past criminal sexual assaults for his propensity to commit murder.

¶ 63 As noted, the trial court found that the evidence of those assaults was relevant and admissible to show, *inter alia*, the defendant's propensity to commit sexual assaults. Each time the evidence was elicited by the State during trial, the trial court read to the jurors a limiting instruction submitted by defense counsel. Similarly, at the close of the evidence, the jurors were given written instructions submitted by the State on the limited purposes for which they could consider the evidence.

¶ 64 The defendant notes that the instruction submitted by the State on the limited purposes for which the jury could consider evidence of the defendant's prior conviction of sexually assaulting Brianna properly told the jurors that they could consider the evidence on the issue of his "propensity to commit aggravated criminal sexual assault." However, both the

instruction submitted by defense counsel and read to the jurors at the conclusion of the testimony of Brianna, Lori, and Linda, and the instruction submitted by the State on the testimony of Lori and Linda, erroneously informed the jury that it could consider the other-crimes evidence on the defendant's "propensity to commit the crime." Because the instructions did not specify which "crime" the jury was to consider the defendant's propensity to commit, the defendant argues that the instructions improperly allowed the jury to consider the other-crimes evidence on the issue of the defendant's propensity to commit "the crime" of first-degree murder. The defendant argues that the erroneous instructions deprived him of a fair trial.

¶ 65    Jury instructions are intended to guide the jury and to assist it in its deliberations and in reaching a proper verdict. *People v. Parker*, 223 Ill. 2d 494, 501 (2006). The instructions should be construed as a whole, and a reviewing court must determine whether those instructions–as a whole–fairly, fully, and comprehensively advised the jury of the relevant legal principles. *Id*. When a jury is not given proper guidance through instructions, it cannot perform its constitutional function, and the defendant's right to a fair trial is violated. See *People v. Pollock*, 202 Ill. 2d 189, 212 (2002) (reversing jury verdict where the jury was given instructions that misstated the law of accountability).

¶ 66    The State argues that the defendant was not deprived of the effective assistance of counsel, because the jury instructions at issue conformed to existing law. The State points to section 115-7.3 of the Code (725 ILCS 5/115-7.3 (West 2008)). That section states:

"(a) This Section applies to criminal cases in which:

(1) the defendant is accused of predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, aggravated criminal sexual abuse, criminal sexual abuse, child pornography, aggravated child pornography, or criminal transmission of HIV;

(2) the defendant is accused of battery, aggravated battery, first degree murder, or second degree murder when the commission of the offense involves sexual penetration or sexual conduct as defined in Section 12-12 of the Criminal Code of 1961; or

(3) the defendant is tried or retried for any of the offenses formerly known as rape, deviate sexual assault, indecent liberties with a child, or aggravated indecent liberties with a child.

(b) If the defendant is accused of an offense set forth in paragraph (1) or (2) of subsection (a) or the defendant is tried or retried for any of the offenses set forth in paragraph (3) of subsection (a), evidence of the defendant's commission of another offense or offenses set forth in paragraph (1), (2), or (3) of subsection (a), or evidence to rebut that proof or an inference from that proof, may be admissible (if that evidence is otherwise admissible under the rules of evidence) and may be considered for its bearing on any matter to which it is relevant.

(c) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:

(1) the proximity in time to the charged or predicate offense;

(2) the degree of factual similarity to the charged or predicate offense; or

(3) other relevant facts and circumstances." 725 ILCS 5/115-7.3 (West 2008).

¶ 67　　According to the State, based on the plain language of the statute, if a defendant is charged with first-degree murder and that murder involves the sexual penetration of the victim, then evidence that the defendant committed a prior sexual assault may be admitted. That evidence may be considered for any matter for which it is relevant. The State therefore contends that the defendant's prior sexual assaults could be used to demonstrate that he had the propensity to commit first-degree murder. Thus, the State insists that there was nothing wrong with the jury instructions, because they complied with section 115-7.3.

¶ 68　　As noted, before such evidence is admitted, the trial court must determine that the evidence is relevant (725 ILCS 5/115-7.3(b) (West 2008)) and that its probative value outweighs any undue prejudice (725 ILCS 5/115-7.3(c) (West 2008)). Thus, whether evidence may be admitted pursuant to section 115-7.3 lies within the trial court's discretion. See *People v. Nelson*, 2013 IL App (1st) 102619, ¶ 41.

¶ 69　　Here, the State never requested that the trial court allow the jury to consider the defendant's past sexual assaults in assessing his propensity to commit murder. As such, the trial court was never afforded the opportunity to exercise its discretion and determine whether it was appropriate pursuant to section 115-7.3 to admit the evidence as to that issue. This bars section 115-7.3 from having served as a proper basis for instructing the jury that it could consider the defendant's past sexual assaults for his propensity to commit murder. *Cf. Moffitt v. Illinois Power Co.*, 248 Ill. App. 3d 752, 758 (1993) (trial court's failure to exercise discretion where it is required to do so constitutes an abuse of discretion).

¶ 70　　Alternatively, the State argues that, even apart from section 115-7.3, the trial court's instructions were not erroneous, because they informed the jury that it could consider the defendant's other conduct when determining whether the defendant had a propensity to commit "the crime" in this case. Because the trial court used the term "crime" in the singular, and because the State specifically stated in its closing argument that the other-crimes evidence could be considered in the context of whether the defendant had committed aggravated criminal sexual assault, the trial court's reference to "the crime" necessarily referred only to aggravated criminal sexual assault.

¶ 71　　The State's argument is controlled by this court's decision in *People v. Boand*, 362 Ill. App. 3d 106 (2005). In *Boand*, the defendant was charged with drug-induced homicide, involuntary manslaughter, and criminal sexual assault. The charges arose out of an incident in which the defendant allegedly provided methadone to one woman, the ingestion of which ultimately led to her death, and sexually assaulted another woman at the same location on the same evening. *Id.* at 110-11.

¶ 72　　To prove the sexual-assault charge, the State introduced testimony of two other women regarding the defendant's sexual assaults against them. Initially, the trial court orally instructed the jury that the evidence was being admitted for the limited purpose of showing the defendant's identity, intent, and motive. The jury was later instructed that the evidence was also admissible to show the defendant's propensity to commit sexual assaults. In a written instruction, the jury was additionally informed that the evidence was being received on the issues of the defendant's " 'propensity to commit the offense of criminal sexual assault, *modus operandi*, motive, intent, opportunity, and identity.' " *Id.* at 121.

¶ 73　　This court found that the manner in which the jury was instructed was erroneous. Although we found that the evidence was admissible for the purposes listed with respect to the charge of criminal sexual assault, we determined that the evidence was not admissible for

- 13 -

any of those purposes on the homicide charges and, instead, constituted improper propensity evidence. *Id.* at 119-21. We found that, while the written instruction to the jury distinguished among the charged offenses with respect to proving the defendant's propensity to commit sexual assault, it did not do so with respect to the remaining purposes. We explained:

> "[T]he remaining issues cited in the instruction *** [were] not linked to any of the three charged offenses. This lack of particularity in the instruction suggests that the jury was to consider the other-crimes evidence when determining defendant's *modus operandi*, motive, intent, opportunity, and identity in committing criminal sexual assault as well as drug-induced homicide and involuntary manslaughter." *Id.* at 121.

¶ 74    Here, as in *Boand*, the trial court's instructions did not specify for which charge the jury could consider the other-crimes evidence. Since we cannot say with certainty that the jury must have concluded that the "crime" referred to was the criminal sexual assault, the trial court's instructions were improper.

¶ 75    Because defense counsel did not object to the trial court's improper instructions, and because defense counsel actually tendered one of them, the defendant asserts that he is entitled to relief based on his having received ineffective assistance of counsel. In reviewing a claim of ineffective assistance of counsel, the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), apply. *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984). To succeed on such a claim, a defendant must show both that his counsel's performance "fell below an objective standard of reasonableness" (*Strickland*, 466 U.S. at 688) and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*id.* at 694). A court will not find that the defendant was prejudiced by his counsel's representation if the evidence against the defendant was overwhelming. *People v. Buchanan*, 403 Ill. App. 3d 600, 608-09 (2010). A claim may be disposed of on the prejudice prong alone without deciding whether counsel's performance was deficient. *People v. Munson*, 171 Ill. 2d 158, 184 (1996).

¶ 76    Here, as discussed above, the evidence against the defendant was overwhelming. Thus, he was not prejudiced by his attorney's alleged deficiency. See *Buchanan*, 403 Ill. App. 3d at 608-09.

¶ 77    The defendant's final contention on appeal is that the trial court erred in curtailing defense counsel's cross-examination of Lori. On direct examination, Lori testified that on the night in question she had been at the Monkey Business bar. Although she had occasionally earned money as a prostitute, she was not working as a prostitute that night. On cross-examination, defense counsel asked her whether "the Monkey Business is an establishment [she had] worked prostitution out of." Before Lori could answer, the trial court sustained the prosecutor's unspecified objection. The defendant contends that the trial court's ruling was erroneous because the question was relevant and material to a number of issues for the jury to decide.

¶ 78    A criminal defendant has the right to conduct a reasonable cross-examination. *People v. Davis*, 185 Ill. 2d 317, 337 (1998). The latitude allowed on cross-examination rests within the sound discretion of the trial court, and a reviewing court should not interfere absent a clear abuse of discretion resulting in manifest prejudice to the defendant. *People v. Hall*, 195 Ill. 2d 1, 23 (2000).

¶ 79    The trial court did not abuse its discretion in not allowing defense counsel to question Lori as to whether she previously worked as a prostitute out of the Monkey Business. This

question was irrelevant to whether, on the night in question, she was working as a prostitute. See *People v. Priest*, 297 Ill. App. 3d 797, 806 (1998) ("Any evidence Peggy may have allowed defendant into her home on prior occasions did not make more or less probable the issue of whether she allowed defendant into her home on the night in question. The evidence clearly showed that, on that night, she explicitly refused entry by defendant. Defendant presented no evidence Peggy authorized him to enter her home on that night."). As such, the trial court properly sustained the State's objection. See *People v. Buie*, 238 Ill. App. 3d 260, 275 (1992) (a general objection raises only questions of relevancy and materiality).

¶ 80                                                 CONCLUSION

¶ 81        For the reasons stated, the judgment of the circuit court of Winnebago County is affirmed.

¶ 82        Affirmed.