2025 IL App (1st) 231352-U

No. 1-23-1352

Order filed September 5, 2025

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 C3 30066 |
| | ) | |
| JAMES BREWER, | ) | Honorable |
| | ) | Marc Martin, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Tailor and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction for "aggravated driving under the influence of alcohol" where (1) the evidence was sufficient to prove he was impaired and (2) his claim of ineffective assistance of trial counsel was unpreserved for appellate review.

¶ 2    Following a bench trial, defendant James Brewer was found guilty of "aggravated driving under the influence" of alcohol and sentenced to three years' imprisonment. On appeal, defendant argues that (1) the State failed to prove beyond a reasonable doubt he was impaired by alcohol and

(2) trial counsel rendered ineffective assistance by failing to provide evidence of defendant's medical conditions and their adverse effect on his standardized field sobriety test (SFST) performance. For the following reasons, we affirm.

¶ 3                                    **BACKGROUND**

¶ 4      Brewer was charged with multiple traffic offenses. The State proceeded on three counts of "aggravated driving under the influence" of alcohol, which charged that he drove or was in actual physical control of a motor vehicle while under the influence of alcohol and that, as the aggravating factor, he had four prior driving under the influence or similar convictions (count I, Class 1 felony), three such convictions (count II, Class 2 felony), and two such convictions (count III, Class 2 felony). 625 ILCS 5/11-501(a)(2), (d)(1)(A), (d)(2)(B)-(D) (West 2022).

¶ 5      At trial, Hanover Park police officer Ryan Rhode testified that he had been an officer for four years and had received training on driving under the influence and traffic investigations. In April 2021, he attended training to refresh his knowledge on SFSTs and signs of impairment.

¶ 6      On March 13, 2022, at approximately 6:10 p.m., Rhode responded to a vehicular crash with injuries at the intersection of Lake Street and Barrington Road in Hanover Park, Illinois. He observed two vehicles with "heavy damage" in the intersection and a white van east of the intersection. After an investigation, he determined the van to be the at-fault vehicle. In court, he identified Brewer as the driver of the white van.

¶ 7      Rhode and Brewer briefly conversed at the scene and then spoke in an ambulance. Brewer had glossy, bloodshot eyes and an odor of alcohol on his breath. He told Rhode that he had consumed a mimosa earlier in the day and ultimately refused treatment. Rhode then requested that Brewer perform SFSTs, to which he agreed.

¶ 8     SFSTs test for impairment and consumption of alcohol. Before the tests, Rhode asked Brewer whether he had any medical conditions; Brewer stated that he had hypertension and some pain in his left arm. Rhode opined that those conditions would not have affected Brewer's performance on the tests.

¶ 9     The first test was the horizontal gaze nystagmus (HGN) test. Prior to the test, Rhode checked that Brewer's eyes "tracked equally," did not have "resting nystagmus," and his pupils were "equal size." Rhode explained the test to Brewer, and Brewer acknowledged that he understood. The HGN test has six clues, three for each eye. The clues are "lack of smooth pursuit," "distinct and sustained nystagmus at maximum deviation," and "onset prior to 45." Brewer presented all six clues. Displaying four clues points to alcohol consumption.

¶ 10    The second test was the walk-and-turn test. The walk-and-turn test has eight clues. Rhode explained the test to Brewer. Initially, he stated that he did not understand. After Rhode repeated the instructions, Brewer stated that he understood. Brewer did not advise that he had any injuries that prevented him from performing this test. He struggled to stand in the position instructed and had to be shown the position multiple times. During the test, Brewer miscounted his steps, stepped out of line, missed the heel to toe step, lost his balance, stepped backward, completed an improper turn, and used his arms to balance, displaying seven clues in total. An individual displaying two clues shows impairment.

¶ 11    The final test was the one-leg stand test. Rhode explained the test to Brewer, who understood and stated that he had no medical reason why he could not perform the test. The one-leg stand test has four clues. During the test, he put his foot down several times, used his arms for

balancing, and swayed, displaying three clues in total. An individual displaying two clues shows impairment.

¶ 12   Brewer was arrested after performing the SFSTs and taken to the police station. There, he was read the warning to motorists and observed for 20 minutes prior to being asked to take a breathalyzer, which he refused.

¶ 13   Rhode testified that he had seen individuals under the influence "hundreds of time[s]" in his professional experience. Based on Brewer's "poor driving," his causing the vehicular accident, his admission to consuming alcohol, the appearance of his eyes, the alcoholic odor on his breath, his swaying, and his performance on the SFSTs, Rhode opined that Brewer was under the influence of alcohol and impaired during the accident.

¶ 14   The State published the red light camera video from the intersection of Lake and Barrington without objection. The video is part of the record on appeal and was reviewed by this court. In the video, a white van crashes at a high rate of speed into two vehicles waiting at a light, pushing both vehicles into the intersection. A man, whom Rhode identified as Brewer, comes into frame and walks to the damaged vehicles. Two police vehicles then arrived.

¶ 15   Next, the State published, without objection, the dashcam video from the other responding officer's police vehicle, which captured Brewer performing the SFSTs. The video is part of the record on appeal and was reviewed by this court. In the video, Brewer states that he does not have "great balance" and has a "messed up" arm. He does not state that he has any injuries that would prevent him from performing the tests. During the instruction phase of both the walk-and-turn and the one-leg stand test, Brewer repeats the instructions given by Rhode multiple times and has the instructions repeated to him at least twice. On the walk-and-turn test, Brewer miscounts his steps,

steps out of line, stumbles slightly, steps backward, makes an improper turn, and lifts his arms once. On the first attempt of the one-leg stand test, he lifts his leg for two seconds prior to putting it on the ground. On his second attempt, he stumbles slightly, lifts his arms, stops counting out loud despite being told to do so, and puts his foot on the ground prior to Rhode's instructions.

¶ 16    On cross-examination, Rhode stated that Brewer did not have any balance issues when Rhode first saw him. During Rhode's first brief interaction with him, Rhode did not notice an odor of alcohol on Brewer's breath because Brewer was wearing a mask. When Rhode spoke to him in the ambulance, he answered Rhode's questions and was not slurring his words. Rhode could not recall whether Brewer's mask was covering his face. Brewer did not "stumble," "stagger," or fall prior to the SFSTs. He informed Rhode that he had issues with his balance prior to performing the walk-and-turn test. The odor of alcohol on Brewer's breath was moderate.

¶ 17    On redirect examination, Rhode stated that his initial interaction with Brewer lasted less than a minute. Rhode did not make any observations about his appearance at that time because Rhode's focus was on the safety of everyone involved and the traffic in the intersection. While stumbling, falling, and issues with balance may show impairment, a person under the influence of alcohol does not have to display those characteristics.

¶ 18    Paramedic Rosa Gonzalez testified that she responded to the scene and checked Brewer for injuries. He told her he had back and neck pain, and he was "not sure how the accident occurred," but he saw a vehicle in front of him and "struck the vehicle." Gonzalez, who was wearing a mask, smelled a "moderate to strong" odor of alcohol on Brewer's breath. Gonzalez did not remember if Brewer was wearing a mask. Gonzalez asked him if he had consumed alcohol and he told her that

he had a mimosa around 8 a.m. He refused her advice to go to the hospital, signed a form to that effect, and was released from care.

¶ 19    On cross-examination, Gonzalez described Brewer's gait as "steady", stated he had "good balance", and could make and communicate medical decisions. Gonzalez did not document in her report that Brewer had a moderate to strong odor of alcohol on his breath.

¶ 20    After closing arguments, the trial court found Brewer guilty of all three counts of "aggravated driving under the influence" of alcohol. In its ruling, the court noted that the testimony of Gonzalez was credible, and Rhode's testimony "certainly" led to the "reasonable inference that the [d]efendant was the driver of the white van involved in the accident." It also found the testimony of Rhode and Gonzalez credible regarding an odor of alcohol on Brewer's breath. Given his admission to consuming alcohol earlier in the day, his performance on the SFSTs, "poor driving" that caused a "high speed" accident, Rhode's opinion that defendant was under the influence of alcohol, and refusing a breathalyzer, which showed "consciousness of guilt," the court found Brewer guilty of "aggravated driving under the influence" of alcohol.

¶ 21    After issuing its findings, the court stated Brewer's prior driving under the influence convictions were "a sentencing issue." The State then proffered that he had four prior convictions for driving under the influence, three in Illinois and one in Indiana. Defense counsel did not object. The court declined to revoke his bond and take him into custody given his health issues, which, according to the defense, included "recovering from a stroke," appointments with a cardiologist, and chronic kidney disease.

¶ 22    On April 26, 2023, trial counsel filed a motion for judgment of acquittal or, in the alternative, for a new trial, arguing, *inter alia*, that the State failed to prove that Brewer was under

the influence of alcohol. On April 28, 2023, Brewer's new counsel entered an appearance. The record does not reflect that new counsel filed an amended motion for a new trial. Brewer's presentence investigation (PSI) report reflected that he took medication for "high blood pressure, cholesterol, and kidney," had a stroke three weeks prior to the PSI interview, stage three kidney disease, heart surgery in 2022, and was wearing a heart monitor.

¶ 23    While the record does not contain a transcript from the hearing on the posttrial motion or sentencing, the common law record reflects that the trial court denied the motion on July 28, 2023. That same day, the court vacated the guilty finding on count I and merged count III into count II. The court then sentenced Brewer as a Class 2 offender due to the prior driving under the influence convictions and imposed three years' imprisonment, but it ordered a stay of the mittimus pending his appeal.

¶ 24                                    **ANALYSIS**

¶ 25    On appeal, Brewer first challenges the sufficiency of the evidence establishing that he was impaired by alcohol.

¶ 26    In considering a challenge to the sufficiency of the evidence, the relevant inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will not retry the defendant. *People v. Nere*, 2018 IL 122566, ¶ 69. The trier of fact's role is to "assess the credibility of the witnesses, weigh the evidence presented, resolve conflicts in the evidence, and draw reasonable inferences from the evidence." *People v. Daniel*, 2022 IL App (1st) 182604, ¶ 102. A reviewing court will not substitute its

judgment for that of the trier of fact with respect to those issues. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009).

¶ 27    The trier of fact need not "disregard inferences that flow normally from the evidence before it" or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70. Therefore, we "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Givens*, 237 Ill. 2d 311, 334 (2010). A conviction will not be set aside unless "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 28    Although Brewer purportedly challenges his conviction on count I, he was acquitted of that charge and found guilty and sentenced on count II. Therefore, he may only appeal from count II. See *People v. Ramirez*, 2023 IL App (1st) 221227, ¶ 33 (a "defendant has a right of appeal only from [the] count *** upon which [the] sentence was entered"). However, his argument equally applies to count II as the charged conduct underlying the counts was the same.

¶ 29    To prove defendant guilty of "aggravated driving under the influence" (count II), the State was required to show, in relevant part, that defendant was driving or in actual physical control of a vehicle while under the influence of alcohol. 625 ILCS 5/11-501(a)(2), (d)(1)(A), (d)(2)(C) (West 2022). A "driving under the influence offense" is enhanced to "aggravated driving under the influence" when, as charged here, the defendant has a prior "driving under the influence" or similar convictions. See *Id.*

¶ 30    Brewer does not challenge whether he had the requisite prior convictions to elevate the "driving under the influence" offense to "aggravated driving under the influence".[1] He only disputes the sufficiency of the evidence to prove he was impaired or under the influence of alcohol.

¶ 31    A defendant is under the influence of alcohol when, as a result of consuming alcohol, his or her "mental or physical faculties are so impaired as to reduce [the] ability to think and act with ordinary care" so much that it "renders [the defendant] incapable of driving safely." (Internal quotation marks omitted.) *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 57. Where the arresting officer provides credible testimony, scientific proof of intoxication such as a breath or blood alcohol test is unnecessary. *Id.* ¶ 58; *People v. Morris*, 2014 IL App (1st) 130512, ¶ 20. The State may rely solely on circumstantial evidence, such as testimony that the defendant had bloodshot or glassy eyes, breath that smelled of alcohol, and refused chemical testing, which shows a consciousness of guilt. *Morris*, 2014 IL App (1st) 130512, ¶ 20. Moreover, "[t]he testimony of a single, credible police officer may alone sustain a conviction for 'driving under the influence' of alcohol." *People v. Phillips*, 2015 IL App (1st) 131147, ¶ 18.

¶ 32    It is the trier of fact's duty to resolve whether a defendant was under the influence of alcohol. *Groebe*, 2019 IL App (1st) 180503, ¶ 57. In making that determination, a trier of fact may consider "the officer's observations, such as the defendant's conduct, speech, or appearance; the

---

[1] "[T]he existence of prior DUI violations *** at the time of the charged DUI were not essential elements of the charged offenses that the State was required to prove at trial but rather sentencing enhancement factors." *People v. May*, 2021 IL App (4th) 190893, ¶ 32. Thus, as the trial court noted, these prior convictions would have been properly adduced at the sentencing hearing. *Id.* ¶ 33. The record on appeal does not include a transcript of the sentencing hearing. Defendant, as appellant, had the burden to furnish a sufficiently complete record on appeal and any deficiencies in the record must be construed against him. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

odor of alcohol on the defendant's breath; and testimony that the defendant failed a field sobriety test." *Id*. ¶ 58. "Any evidence of alcohol consumption is relevant to the issue of impairment." *Id*.

¶ 33    Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found that Brewer was impaired and under the influence of alcohol at the time of the accident. Rhode and Gonzalez testified that they detected a moderate to strong odor of alcohol on his breath while speaking to him regarding the accident. Rhode also noted that he had bloodshot, glossy eyes and had admitted to consuming a mimosa earlier in the day. Footage shows Brewer exhibited numerous clues for alcohol impairment during the SFSTs, which corroborated Rhode's testimony to that effect. He also refused a breathalyzer. Based on Rhode's training, experience, and observations, he believed Brewer was under the influence of alcohol during the accident. The trial court found the testimony of Rhode and Gonzalez credible, and it is a determination we will not reassess. *Siguenza-Brito*, 235 Ill. 2d at 224-25 (a reviewing court will not substitute its judgment for that of the trial court with respect to credibility issues).

¶ 34    Under the totality of the circumstances, it was reasonable for the court to infer that Brewer was impaired and under the influence of alcohol. Construing the evidence in the light most favorable to the State, a rational trier of fact could have found that he was "driving under the influence" of alcohol. See *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (all reasonable inferences are viewed in the light most favorable to the prosecution).

¶ 35    Nevertheless, Brewer contends that "reasonable doubt" of his impairment exists because the video evidence showed that he did not have issues with his balance, had a steady gait, and was not slurring his words during his conversations nor during his SFSTs.

¶ 36     Contrary to his contention, there is no reasonable doubt that he was impaired. Ample evidence aside from the video evidence supported the reasonable inference that he was under the influence of alcohol. Rhode testified that, given his experience, Brewer's appearance, poor driving which caused an accident, admissions to consuming alcohol, performance on the SFSTs, and refusal to take a breathalyzer led him to conclude that Brewer was under the influence of alcohol. The trial court found Rhode credible. As noted, "[t]he testimony of a single, credible police officer may alone sustain a conviction for 'driving under the influence of alcohol.' " *Phillips*, 2015 IL App (1st) 131147, ¶ 18.

¶ 37     Moreover, the video evidence corroborated Rhode's testimony in showing that Brewer needed the SFST instructions repeated multiple times and exhibited multiple clues of alcohol impairment while performing them. The trier of fact is not required to "disregard inferences that flow normally from the evidence before it" or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Jackson*, 2020 IL 124112, ¶ 70. Construing all the evidence and reasonable inferences therefrom in the light most favorable to the State, the evidence was sufficient to find Brewer guilty of "aggravated driving under the influence" of alcohol. See *Cunningham*, 212 Ill. 2d at 280.

¶ 38     Next, Brewer contends trial counsel was ineffective for failing to provide evidence of his medical conditions and their adverse effect on his SFST performance. Specifically, he argues the trial court's statement during sentencing that it had no knowledge of his medical conditions at trial and allowing him to remain home during the pendency of his appeal provides "reasonable proof" that the trial court's decision as to guilt may have been different had it known of his medical conditions.

¶ 39    Brewer failed to include this claim in his posttrial motion or an amended motion to preserve it for appellate review. It is therefore waived, as Brewer was represented by new counsel on his postconviction motion who could have raised this issue. *People v. Salgado*, 366 Ill. App. 3d 596, 607 (2006) (ineffective assistance of trial counsel issues waived where the issues were not raised in a posttrial motion filed by an attorney who did not represent defendant at trial). Generally, unpreserved claims may be reviewed on appeal under the plain error doctrine, if such review is argued by a defendant in his brief on appeal. See *People v. Sandifer*, 2016 IL App (1st) 133397, ¶ 56 (a defendant carries the burden of establishing plain error and a defendant who "fails to argue for plain-error review obviously cannot meet his burden of persuasion"). Here, he failed to argue for plain error review; therefore, this claim is forfeited. *Id*.

¶ 40    Had the issue been preserved, however, inadequacies in the record would have precluded us from resolving Brewer's claim of ineffectiveness. The record on appeal does not contain the sentencing transcript nor the medical records and letters from his doctors detailing his health issues that were, according to him, presented at sentencing. The only references to any health issues Brewer suffered were in Rhode's trial testimony that he told him he had hypertension, pain in his left arm, and lacked "great balance," a brief reference of his health issues provided by defense counsel after the court's finding of guilt, and his own statements in his PSI. Moreover, no evidence in the record detailed how his health issues would have affected his performance on the SFSTs. Absent a complete record regarding Brewer's health issues and their potential adverse effect on his performance on the SFSTs, we could not determine that counsel was ineffective for failing to present this evidence at trial and could only speculate on the prejudice Brewer may have suffered.

As a result, this claim would be better raised in a collateral proceeding where he may present the requisite supporting materials. See *People v. Veach*, 2017 IL 120649, ¶ 46.

¶ 41                                        CONCLUSION

¶ 42    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 43    Affirmed.